13196

CANTOR *ET AL.* v. RESERVE LOAN LIFE INSURANCE CO.

(159 S. E., 542)

*Messrs. Frank G. West, W. H. Nicholson* and *R. F. Davis,* for appellant,

*Messrs. Park, McDonald & Todd,* for respondent,

July 7, 1931.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The plaintiffs bring their action against the defendant claiming that they are the beneficiaries named in a policy of insurance issued by the defendant on the life of Abraham Samuels, of Greenwood, S. C., which defendant refuses to pay. The complaint alleges that the said Abraham Samuels at the solicitation of J. C. Rushton, the soliciting agent of the defendant, on the 22d day of July, 1927, made written application to the defendant for a policy of life insurance in the sum of $1,000.00, naming the plaintiffs as beneficiaries; that thereupon J. C. Rushton issued to Samuels a binding receipt of the insurance company, whereby the insurance was made effective on the date of the receipt; the receipt is set out in full in the complaint. Its pertinent features are as follows:

"Received of Abraham Samuels Five Dollars Cash in full for the first annual premium on 1,000 Dollars insurance."

"The insurance shall take effect and be in force according to the terms of the policy for which this settlement is given."

There is set out in the complaint (Paragraph 5), another form of receipt which, it is alleged, is issued when it is not the intention of the parties to put the insurance into immediate effect. It is further alleged that, on August 15, 1927, the application was approved by the company, and on August 17, 1927, its policy, No. 139,889 was issued to Abraham Samuels for the sum of $1,000.00; that, on August 19, 1927, the policy was mailed to J. C. Rushton at Greenville, S. C., for delivery to Samuels; that on August 20, 1927, Samuels was injured in an automobile accident and died next day, August 21; and that the said policy was not delivered to the insured, but was returned to the company, whose binding receipt put the policy into force and effect on the 22d

day of July, 1927. They further allege that the defendant denies liability.

The defendant answered, reserving its right to renew its motion to strike out Paragraph 5 of the complaint, and to demur.

It admits Paragraphs 1, 2 and 3 of the complaint, which set out the corporate capacity of the defendant; the capacity of Jesse F. Ouzts, Jr., as general agent, and of J. C. Rushton, as soliciting agent of the company. It admits so much of Paragraph 4 as alleges the issuance of the receipt set out in it, but denies that it was a binding receipt, which made the insurance effective as of that date; that the receipt was delivered to Samuels in connection with the making of his application, and as a part of the same transaction, which application contained the agreement of Samuels to this effect; that the policy applied for should not take effect unless the applicant was alive and in good health at the time of delivery, nor then unless the first annual premium has been paid in cash, or by note; that any delivery of the policy to an agent, or other person, or mailing the same to the applicant, should not be regarded as a delivery to him until actually received by him and the company's form of receipt is duly signed.

The answer admits so much of Paragraph 6 of the complaint as alleges the approval of the application, and that a policy numbered 139,889 in the sum of $1,000.00 was prepared by defendant and mailed to its soliciting agent at Greenville, S. C., but denied all other allegations of the paragraph, and denies that any completed contract of insurance was consummated with Samuels.

The answer admits so much of Paragraph 7 as alleges the injury to, and the death of, Abraham Samuels on August 21, 1927, and that the policy was never delivered to him, and denies that defendant issued its binding receipt whereby the policy was put in force on the 22d day of July, 1927.

Defendant admits that it denied liability.

For further answer it was alleged:

That the established annual premium for a policy of the character applied for by Samuels, and at his age, is $46.06 per $1,000.00 of insurance, no part of which has been paid except the sum of $5.00.

That when prepared the policy was mailed to the company agent at Greenville, S. C., with instructions not to deliver it unless the applicant were alive and in good health, and then only upon the payment of the first annual premium in full, and the signing of the policy receipt; that the policy was not received by the agent until the morning of August 22d, at which time the applicant was dead. That defendant has tendered to plaintiffs the sum of $5.00 paid by the applicant, and has paid that sum into the hands of the Clerk of Court.

Further answering defendant alleges: That the receipt given to Samuels provided that "the insurance shall take effect and be in force according to the terms of the policy for which this settlement is given"; that the policy applied for contains the following provision: "This policy shall not take effect unless delivered to and received by the insured while alive and in good health, nor then unless the first premium has been paid."

It appears from the transcript of record that there was much confusion in the trial of this case, due, it may be, in part to the fact that the leading counsel for defendant is from another jurisdiction, and is not familiar with our forms and rules of practice and procedure.

Notice had been given by defendant that it would move before Judge Featherstone for an order striking out Paragraph 5 of the complaint. When the matter came on for hearing, defendant's counsel desired to argue, in addition to its motion to strike out Paragraph 5, a demurrer to the complaint. To this plaintiff's counsel objected because no notice of demurrer, with grounds thereof, had been given. The motion was denied; the demurrer was not heard. Although defendant in answering reserved its right to renew its motion to strike and its right to demur,

it does not appear that when the case came up for trial before Judge Mauldin that defendant availed itself of its rights thus reserved. Therefore its exceptions along this line are not available to it. However, this is not important in the view which we take of the appeal.

At the close of the testimony for the plaintiffs the counsel for defendant moved for a directed verdict in its favor. There ensued much colloquy and argument between counsel and the Court.

"Mr. Davis: I understood that Mr. West didn't have any testimony. I introduce this application here (indicating), in evidence.

"Court: This is a motion to direct verdict on the plaintiff's testimony.

"Mr. Todd: If it is refused, we are entitled to a directed verdict.

"Court: The testimony for the plaintiff is closed, we are considering a motion for a directed verdict. If I direct that verdict that ends the case, if I don't, I will hear from you further.

"Mr. Todd: Upon this same testimony and upon the pleadings we should have a verdict for the plaintiff.

"Mr. Park: My friends have made a motion to direct a verdict, which means they have no testimony.

"Mr. Park: That application is not before the Court, they are making a motion for a directed verdict.

"Court: There is nothing before the Court now except the receipt.

"Court: It stands admitted here that the policy was issued, it had gone into the mail before his injury. There is no other way to look at it. We are trying to get at the justice of the thing. What did this man take the policy for, he took it for his protection. Did he have a valid policy? It depends on whether or not that policy was issued and delivered. There is no question about it having been issued as far as the function of the company in writing the policy is concerned. It

stands admitted here that it was put in the post office, delivered to the agent, which in effect is delivery to the insured. There is nothing to do here but to direct a verdict for the plaintiff, because they move on the same ground as you do.

"Mr. Davis: We just want to introduce the depositions and the application.

"Court: I don't see that there is anything else here to talk about further.

"Mr. West: I feel that I have not had an opportunity to fairly present my client's case. I feel that in view of the fact that I am not a member of this bar, or a resident of this State, and not familiar with the rules of your Court, I have not fairly presented my client's case.

"Court: You are aided by able counsel. It is not any reflection upon your ability.

"Mr. West: Will your Honor, in your discretion, allow us to withdraw our motion and put in this evidence?

"Court: I don't think there is any use to try this case any further. If what is admitted is true, how can we go any further? As for the motion to direct a verdict for the defendant, I refuse to direct a verdict for the defendant.

"Mr. Park: We are willing for them to introduce what they are offering now.

"Court: The plaintiff has made out its case by the admitted facts under the pleadings.

"Mr. Davis: I would like your Honor to pass upon this motion of the plaintiffs for a directed verdict. Our motion is withdrawn.

"Court: You made a motion for a directed verdict for the defendant and the Court has refused it. Now, I say there is nothing further in this case as I see it to require the time of the Court.

"Mr. Park: In order to give them every consideration we are willing for them to put in whatever competent testimony they want to.

"Court: The Court must take care of itself, you haven't time to go over unnecessary ground.

"Court: I must respectfully decline to direct a verdict for the defendant on their motion. I think the plaintiffs are entitled to a verdict here. Write a verdict for the plaintiffs for the amount.

"Mr. West: I want this record to show that this defendant requested the Court's permission to introduce in evidence the testimony in its respective depositions, which request the Court refused, and to which refusal of the Court the defendant excepted, and thereupon the Court directed a verdict for the plaintiffs."

So it appears that defendant made a motion for a directed verdict at the close of plaintiff's testimony. And plaintiffs urged that, if defendant's motion was denied, they were entitled to a directed verdict. To this his Honor assented, and the motion was granted.

The learned Judge seems to have predicated his ruling upon the assumption that the admissions of the answer and plaintiff's testimony justified the allegations of the complaint and proved plaintiff's contentions. We do not assent to this position.

The complaint alleges the policy was never delivered to Samuels. It is sought to recover upon the receipt issued to him when the application was signed; this the complaint styles a "binding receipt," whereby the policy was put into force on the 22d day of July, 1927, the date of the application.

Defendant denies that this was a binding receipt which put the policy in force as of the date of the application, and pleaded that the receipt on its face showed that the insurance was to become effective as by the terms and at the date provided by the policy applied for.

A close analysis of the receipt discloses that there is nothing in the instrument itself to show that it is what is known as a "binding receipt," which put the insurance into effect as of that date. It required evidence *de hors* the receipt to show that it was given as, and was intended to be, a binding re-

ceipt. Evidently plaintiff's counsel appreciated this fact, and sought to furnish this proof by the testimony of the witness · Wertz, who was not an agent of the defendant, but an assistant of some sort to the soliciting agent Rushton. He testified (folios 102-104) :

"Q. Did you tell him what kind of receipt you were giving him?

"Mr. West: · We object.

"A. Yes, sir. We told him, of course, and collected the money by telling him he was protected by paying on it. That is the only ground we ever have to collect any money.

"Q. That was the only ground you had to collect any money was what you told him? A. Yes, sir.

"Q. Did you describe it to him as a binding receipt? A. Yes, sir."

That was on direct examination by plaintiff's attorneys; on cross-examination this occurred (folios 115-119, inclusive) : -

"Q. Read the language of the receipt whereby the company obligates itself to make that effective as of the time of the application. A. If I do that, I would be saying whether it binds or didn't bind the company. We gave him a receipt for that. I don't suppose a man ever reads a receipt and application.

"Q. Can you answer the question, as to the language of the receipt whereby the company obligates itself and binds itself from the time of the application? A. I don't suppose Samuel taken the receipt on the strength of the wording of the receipt. He taken it on the statement we made him.

"Q. The statements you made to him were made in the face of and in violation of the terms of the receipt?

"Mr. Todd: I object to that.

"Court: Let him answer the question.

"A. I don't know of any violation. I don't know what you refer to.

"Q. Had you been authorized by any form of receipt furnished or in use at that time in connection with your assistance to Mr. Rushton to say to any applicant for insurance that their insurance became effective from the time of the application? Had you been authorized in any manner to make any such representation to any applicant? A. From whom?

"Q. From the Reserve Loan Life Insurance Co.? Did you hold any contract with the Reserve Loan Life Insurance Co.? A. No, sir.

"Q. What did you know with reference to the power granted to Mr. Rushton? A. I never read his contract.

"Q. You don't know whether he was furnished with any criteria other than the form of application and form of receipt used in the *Samuels case?* A. No, sir."

Surely the defendant was entitled to have this issue of fact thus made to go to the jury. Certainly, it was entitled to offer evidence to contradict this superserviceable witness for the plaintiff. It was denied this right. It was denied the right to offer any evidence.

Again, his Honor, in granting the motion for directed verdict for plaintiff, said: "Did he have a valid policy?

It depends on whether that policy was issued and delivered. There is no question about it having been issued as far as the function of the company in writing the policy is concerned. It stands admitted here that it was put in the post office, delivered to the agent which is in effect delivery to the insured."

There is a line of decisions to the effect that the delivery of a policy to the agent of an insurance company to be delivered to the applicant to whom a binding receipt has been given is delivery to the insured. There is an even stronger line of decisions to the effect that the above rule applies only when there is nothing left for the agent to do but hand or send the policy to the insured. If there is something else to be done, the delivery is not complete till those things are

done. With what intent was the policy delivered to the agent? It is said by our own Court in the case of *Williams v. Philadelphia Life Ins. Co.,* 105 S. C., 305, 89 S. E., 675, 676, that, if it is the intention of the company when mailing the policy that it is to be delivered without further action on the part of the insured, the delivery is complete when the policy is placed in the post office. But "the test is whether the policy is mailed to the agent without any other intention than its unconditional delivery to the applicant."

We are not passing upon the merits of the case at bar. The only matter we are considering is whether defendant should not have been allowed the opportunity to show by its witness, documents, and depositions the intent with which the policy had been mailed to the agent at Greenville. It should have been allowed to show that the annual premium on the policy written at the age of the applicant was $46.06; that only $5.00 had been paid. It should have been allowed to show what occurred when the application was taken and the receipt was given, and the character of the receipt. Such testimony was competent and relevant on the issue of "binding receipt" and "delivery" as they were made by the pleadings and by the testimony of Wertz. This opportunity was denied it, by directing a verdict for plaintiff on plaintiff's testimony and the pleadings. We do not think that the answer admitted the essential issues of the case. If it were true that the admissions of the answer entitled plaintiffs to a verdict, the course for plaintiffs to pursue would have been to demur to the answer as not stating a defense, and to move for verdict on the complaint. But plaintiff thought it necessary to offer testimony in support of the allegation of the complaint. We think defendant should have been allowed to offer testimony in reply to it.

The Court and plaintiff's counsel seem to have been of the opinion that defendant's counsel having made a motion for directed verdict for defendant, at the close of plaintiff's testimony, which motion was overruled,

was precluded from offering testimony in its own behalf. Such rule prevails in Federal Courts; it does not prevail in our State Courts.

"A motion for the direction of a verdict cannot properly be made until all the testimony on both sides which is to be submitted to the jury has been introduced." *McCown v. Muldrow*, 91 S. C., 540, 74 S. E., 386, 392, Ann. Cas., 1914-A, 139; to the same effect is *McIntyre v. Cameron*, 124 S. C., 232, 117 S. E., 515.

We have not discussed in detail and severally the questions made by the exceptions. As we have said we are not hearing this appeal on the issues made by the pleadings; we are simply holding that for the reasons given here there was error in directing a verdict for the plaintiff; and, since the case must go back for new trial, it is best that it be heard unaffected by any suggestion of the views of this Court on the issues and the evidence.

The judgment of the Circuit Court is reversed, and the case is remanded to that Court for a new trial.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES COTHRAN, STABLER and CARTER concur.