13980

THE HOMESTEAD BANK v. BEST *ET AL.*

(178 S. E., 143)

*Messrs. John E. Edens* and *DuBose Boylston,* for appellant,

*Messrs. Searson & Searson,* for respondents,

January 16, 1935.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

It appears from the agreed statement in the transcript of record that on September 20, 1927, School District No. 1 of Allendale County, S. C., purchased from Carolina Reo Motor Company, a school bus, to be used to transport children in that school district. The agreed price was $500.00. The same day two of the school trustees, W. L. Best and I. B. Lawton, issued two vouchers to the Carolina Reo Motor Company; one for $250.00, and the other for $263.90. The second voucher was to be paid June 1, 1928. At the same time the trustees issued their promissory note payable to the Carolina Reo Motor Company, for $263.90, June 1, 1928. It was signed by W. L. Best, trustee, I. B. Lawton, trustee, and W. Z. Bryan. Immediately after their execution these written instruments were assigned and transferred by the payee to the Homestead Bank of Columbia, S. C. The first voucher was duly paid. The second voucher and note

were not paid at due date, to wit, June 1, 1928, and this suit was begun thereon June 28, 1928.

The defendants set up several defenses: General denial; that all the defendants signed the note sued on as trustees, but through inadvertence the word "Trustee" was not attached to the name of W. Z. Bryan; deny that plaintiff is the lawful owner and holder of said instrument, and deny liability; that the instrument sued on was obtained by fraud on the part of the agent of the Carolina Reo Motor Company who sold the bus to the trustees, and guaranteed it to be a serviceable article, in first-class condition, and well suited for the purpose for which it was sold; that the said agent agreed that the note was not to be paid if the bus did not meet the above conditions; that this agreement induced the execution of the note, and without it these defendants would not have signed; that the representations were fraudulent and incorrect, the bus being almost worthless; that the plaintiff knew these facts and knew that the consideration of the note had failed; that plaintiff had such notice as would put it in possession of the above-related facts if it had used due diligence in the premises; that because of its knowledge of the failure or probable failure of consideration, the plaintiff did not buy the note outright, but required the Carolina Reo Company to indorse it and to agree that in the event of the failure of the defendants to pay it, the Motor Company would do so; that the note was executed by defendants without authority to bind School District No. 1, and the school district is not indebted thereon because the note was executed without any supervision, confirmation, or approval on the part of the County Superintendent of Education, or other members of the County Board of Education of Allendale County.

Upon the issues thus made the case came to trial before Judge Ramage and a jury, at Allendale.

Before the conclusion of the testimony for plaintiff, his Honor announced his intention of directing a verdict in

favor of the school district "unless they proved something else."

At the close of the plaintiff's testimony this occurred:

"Mr. Searson: As to the School District, we ask for a directed verdict.

"The Court: I will give you a directed verdict as to the School District, Mr. Searson.

"Mr. Edens: You mean for a directed verdict, or for a nonsuit? If he has closed his case he would have a right to make a motion for directed verdict, if your Honor please.

"Mr. Searson: Just as to the School District, Mr. Edens.

"The Court: Mr. Edens, as to the School District he is not offering any testimony, and I am directing a verdict as to the School District. It is my understanding, Mr. Searson, that you have no evidence to offer on behalf of the trustees?

"Mr. Searson: No, Sir. *I have no evidence along that line.*" (Italics added.)

It will be observed that before plaintiff's testimony was ended, his Honor had announced his purpose to direct a verdict for the school district, "unless they prove something else." At the conclusion of plaintiff's testimony, and before the announcement that he would offer no testimony, the counsel for defendants moved for a directed verdict as to the school district, and it was granted. In the colloquy between the Court and both counsel, the Court said: "It is my understanding, Mr. Searson, that you have no evidence to offer on behalf of the trustees?" Mr. Searson answered: "No, Sir. *I have no evidence along that line.*"

It is the settled rule of this Court that a motion cannot be made, nor a verdict directed, till all of the testimony is in.

After the Court had said, "I will give you a directed verdict as to the School District," counsel for plaintiff asked that the Court put on record its grounds for granting the motion for directed verdict. His Honor said: "I hold that under the facts before me here as to the

School Trustees I direct a verdict for them, but I leave the matter open as to Mr. Bryan, for I do not direct a verdict as to him."

It is plain that the Court, when it granted the motion, did not understand that defendants did not intend to offer any testimony.

Mr. Edens, for plaintiff, asked: "Has he closed his case, if he has not the Court can only grant a nonsuit?"

Mr. Searson said: "Your Honor, we have closed our case as to the Board of School Trustees."

The Court: "But not as to Mr. Bryan?"

Mr. Searson: "We close our case as to Mr. Bryan in that he was acting in the capacity of a school trustee."

There was not one title of testimony that W. Z. Bryan was acting in the capacity of trustee. On cross-examination there is some confusion in the testimony of Miss McGarrity relative to this question. But throughout her testimony, and repeatedly, she said Mr. Bryan signed the note individually and was treated as an individual endorser. On cross-examination this occurred (folio 104):

"I thought those two were acting for the School.

"Q. And you knew Mr. Bryan was the third one? A. I thought he was standing behind them.

"Q. And you knew those two wasn't the only trustees for you knew Mr. Bryan was a trustee? A. No, Sir. I knew he was an individual, and I was told so."

This is repeated throughout the testimony of this witness.

His Honor directed a verdict against Mr. Bryan individually, saying: "I will direct a verdict against Mr. Bryan individually, for I do not see anything from him along that line, Mr. Searson. Now, I understand he signed that note individually, Mr. Searson. ·

"Mr. Searson: Yes, Sir.

"The Court: Write out a verdict, Mr. Foreman, against Mr. Bryan for he signed the note as an individual and not as a trustee."

The action of the trial Judge in announcing his purpose to direct a verdict for the school trustees before the plaintiff had closed its testimony was premature, and was not rendered competent by what ensued. It is plain that that situation was induced by this premature announcement of the purpose to direct a verdict.

"A motion for the direction of a verdict cannot properly be made until all the testimony on both sides which is to be submitted to the jury has been introduced." *McCown v. Muldrow,* 91 S. C., 540, 74 S. E., 386, 392, Ann. Cas., 1914-A, 139; *McIntyre v. Cameron,* 124 S. C., 232, 117 S. E., 515; *Cantor v. Ins. Co.,* 161 S. C., 198, 159 S. E., 542.

The trial Judge never stated the grounds upon which he directed the verdict for the trustees, further than to say it was upon the facts before him. Now, the only testimony before him was that of the plaintiff. This went to prove the allegations of the complaint which unquestionably showed and proved the cause of action alleged. The cross-examination wholly failed to sustain the defenses, to wit, that the trustees had no authority to sign the note; that there was a failure of consideration, or any other of the defenses set up. Evidently, defendants' counsel stood upon the premature action of the Court in directing a verdict. Counsel for appellant assumes that the Court stood upon the theory that the trustees had no authority to sign the note. If that is so, there is not a line of testimony to sustain such contention. On the contrary, there is proof that these trustees issued two vouchers for this purchase and the first one was paid without dispute by anyone. The County Treasurer testified that he would pay a voucher issued by two trustees.

The trustees had the express authority to make the contract evidenced by their note. Section 5350, Vol. 2, Code 1932, provides that: "Every school district now organized, or to be hereafter organized in pursuance of this section, is and shall be a body politic and corporate, by the name and style of School District No. . . . . * * *

and in that name may sue and be sued, and be capable of contracting and being contracted with to the extent of their school fund."

It is admitted that the school district had money to ■ pay the note when due.

This provision of this section has been construed and upheld in *Sherbert v. School District,* 169 S. C., 191, 168 S. E., 391, and other cases.

The school district received and used the property for which the note was given. Not a word of evidence is offered to prove that it was worthless as alleged, nor that the note was obtained by fraud.

The judgment is reversed as to the school trustees, W. L. Best and I. B. Lawton. Inasmuch as the defendant W. Z. Bryan does not appeal from the judgment against him, it is affirmed.

Messrs. Justices Stabler and Carter and Messrs. Acting Associate Justices G. Dewey Oxner and A. L. Gaston, Circuit Judges, concur.