14294

McKINNEY v. GUARDIAN LIFE INS. CO. OF AMERICA

(185 S. E., 738)

November, 1935.

*Messrs. Williams & Henry,* for appellant,

*Messrs. Haynsworth & Haynsworth,* for respondent.

May 12, 1936.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This was an action begun in the Court of Common Pleas for Greenville County, seeking to recover actual and punitive damages for the alleged fraudulent breach of a certain

$2,500.00 life insurance contract issued by the respondent on the life of the appellant, and for the alleged fraudulent breach of a contract to issue and put in force a certain other $2,000.00 life insurance contract on his life. The trial Judge directed a verdict in favor of respondent, and this appeal questions the direction of verdict and the refusal of the trial Judge to admit in evidence certain testimony offered. In order to pass upon the first question, it will be necessary to, as briefly as possible, review the facts of the case.

In 1921 respondent issued a policy of endowment insurance on the life of plaintiff in the sum of $2,500.00, said policy to mature when the plaintiff should reach the age of 65, which would have been April 8, 1950, provided the policy was kept in force. The premiums thereon were payable quarterly in the sum of $23.20, beginning with the 8th day of April, 1921, until 29 full years had elapsed, if appellant continued to live. This policy had loan values and cash surrender values, and in February, 1934, appellant had borrowed against said policy $727.08. He had experienced considerable trouble in keeping the policy in force, and the local agent of respondent, learning that appellant contemplated making a change in his insurance, the appellant having taken the matter up with the agent of another insurance company, went to the home of appellant, and after talking the matter over with him, it was decided that appellant would increase the loan on his $2,500.00 endowment policy the then accrued additional loan value $116.37, or thereabouts, procure in lieu thereof a $2,000.00 ordinary life policy, and which was to cost a premium of $87.12 annually. Appellant thereupon signed an application for the $2,000.00 ordinary life policy with respondent, which $2,000.00 policy, after a physical examination, was duly delivered to appellant, providing for the payment of annual premiums, together with respondent's check for the additional loan value on the $2,-500.00 endowment policy. At the time of the delivery of the policy and the additional loan of approximately $116.00,

appellant indorsed the check for the said $116.00, delivering the check to the agent of respondent, who gave to appellant the difference in cash between the annual premium on the $2,000.00 policy and the amount of the check of respondent. During the time of the transactions hereinafter set forth, appellant made an affidavit that the $2,500.00 endowment policy was lost and applied for the payment of the total cash surrender value of said policy, and this policy was thereupon canceled by respondent, and the difference between the loan on said policy and the cash surrender value thereof, amounting to $16.67, was paid to appellant.

A few hours, or, as expressed in the testimony, "within an hour or two" after the $2,000.00 policy was delivered to appellant, he decided that he needed a little ready cash, so took the $2,000.00 policy to the agent of respondent and requested that he arrange to have the policy changed so that the premiums would be payable semiannually, and requested the agent to refund him one-half of the annual premium that had been paid. The agent claimed to have already forwarded the annual premium, and told appellant he would have to leave the policy with him for the change or for a new policy to be issued in lieu thereof. This was apparently in the very latter part of February, 1934. Appellant had considerable trouble in collecting from respondent's agent the difference between the $87.12 annual premium on the $2,000.00 policy and the semiannual premium thereon, but this was finally paid to appellant. The new policy, or the changed policy providing for semiannual premiums, was issued by respondent and sent to its agent who had been dealing with appellant, but this policy as changed was never actually delivered to appellant, nor did the agent of respondent ever send to respondent any portion of the premium therefor, and during the 6-month period, for which premium had been paid thereon, an auditor of respondent came through Greenville on May 2, 1934, or thereabouts, and took up said rewritten policy and had it canceled.

About 30 days prior thereto, to wit, on April 7, 1934, this agent of respondent, having formed a new connection with Volunteer State Life Insurance Company, a competitor of respondent, approached appellant with reference to changing his insurance from respondent to the Volunteer State Life Insurance Company, representing that he could get him a better premium rate with this latter company, and furnishing the same or just as good protection. Appellant agreed to this, and signed an application for a $2,000.00 policy with the Volunteer State Life Insurance Company, it being understood that this agent would procure a refund from respondent of the semiannual premium and pay the first premium on the Volunteer State Life Insurance Company's policy. The Volunteer State Life Insurance Company, upon the application of appellant, and following his physical examination, issued a policy to him, although appellant was rated up and this policy was sent to the agent at Greenville, who reported to appellant that he had the policy in his office, but appellant was never able to get possession of the policy. It was the policy in the Volunteer State Life Insurance Company that appellant was demanding possession of and not the policy issued by respondent. The record discloses that the Volunteer State policy was returned to the company as undelivered and canceled on the theory that it had never been in force.

On October 13, 1934, appellant wrote respondent as follows:

"I dislike to ask you to go to the trouble of filling out the enclosed questionaire, but I feel that I have had a raw deal, not by you or your company but by others, and I need the information asked for and think it will help me to get something done by law or some way.

"Here is a brief statement of what has happened:

"Some time the early part of this year Mr. B. S. Williams came to my home one night and told me he was with the Guardian Life Insurance Co. and he noticed that I had

a policy with them that was in distress. The loan was so large he advised me to get what loan value I could out of it and drop it; replacing it with a $2,000.00 policy. I agreed. At the same time he told my wife and I that when the policy came he would bring it to our home and read it over to us, and have us satisfied but instead of doing that, he came hurriedly to where I was working with the policy and loan check in his hand and had me endorse the check and gave me the policy and change which was about $18.00 and he was in such a hurry he had my change already counted out. So I went to his office in an hour or so and told him I wanted to pay only a six months' premium instead of a yearly and he said he had already sent my money but would get it back. I got the half year's premium back in installments.

"Then a little later he came to me and wanted me to cancel the new $2,000.00 policy with you and take one with the Volunteer State Life Insurance Co. as he was with them now and could save me $22.00 per year so I agreed and I would see him after this pretty often collecting those installments of the half year's premiums so pretty soon he told me he had my policy at his office and I could get it any time and that the premium was paid till some time next year. Shortly after this I was taken sick and was in bed five weeks so I sent for the policy and he said he did not have it; that an auditor had taken it up, because he could not deliver it. He never made any attempt to deliver it and I don't know whether I will be considered a good risk now or not.

"Thanks for your patience and any help or suggestion you may make will be appreciated."

And just one month prior thereto he wrote Volunteer State Life Insurance Company as follows:

"About three or four months ago your agent, Mr. B. S. Williams took my application for a $2,000.00 policy with your company. At the same time he advised and assisted me in cancelling a policy with the Guardian Life Ins. Company.

I told him I did not want to cancel my policy with the Guardian Life Ins. Co. until I was sure of a policy with you. After two or three weeks I saw Mr. Williams on the street and he told me that he had my policy and that I could get it some time in passing his office. I called at his office once or twice and he wasn't in so I didn't get the policy. I thought my policy was safe and in force in his hands. I understood he had taken care of the premium on your policy somehow in the settlement with the Guardian Life Ins. Co. as he told me the premium was paid on my policy with you. He didn't make any attempt at any time to deliver the policy to me and now when I ask for the policy he says he doesn't have it; that an auditor took it up but he didn't tell me that until to-day (Sept. 13, 1934).

"Then I had a letter from your Sec., J. E. Donovan, dated July 14, 1934, instructing me to send all future remittances to Charleston, S. C. In receiving this letter from your Sec. strengthened my belief that my policy was in force. I am very much disappointed in the treatment that I have received from your agent. Please advise by return mail what can be done about it.

"I am very sorry this has happened and trust that you can make everything satisfactory as I'm sure it is not the wish of the Co. to have things go this way.

"Thanking you I am.   *   *   *

"(Sept. 24)

"P. S. I have delayed mailing this letter to hear from Mr. Williams as he told me when I called up last Saturday 15 that he was going to the home office on Mon. 17th and he would see what could be done about my policy and he would come to my house when he came back and let me know about it and I haven't seen or heard from him since the 15th."

At the time these letters were written appellant was not in possession of the information that the one-time agent of respondent, who during the transactions had switched his

allegiance to Volunteer State Life Insurance Company, had never remitted any portion of the premiums to appellant for the $2,000.00 policy.

After appellant learned the true facts and that he had no insurance and having in the meanwhile become uninsurable, he undertook to induce respondent to issue him a new policy, which respondent declined to do.

Upon the above facts the trial Judge directed a verdict for respondent, holding that any cause of action appellant had was against Volunteer State Life Insurance Company and not this respondent. Of course, as to the $2,500.00 endowment policy, there can be no doubt but that it was regularly canceled out, and appellant received everything to which he was entitled. The difficulty arises in reaching a conclusion as to the handling of the changed or rewritten policy in the sum of $2,000.00. The agent of respondent having delivered the $2,000.00 policy providing for an annual premium and having collected the premium therefor, respondent was absolutely bound under the policy, regardless of the fact that the premium therefor had never been remitted to it by its agent, and, if appellant had died within the year and without having made any change in connection therewith, respondent would have been liable. However, appellant undertook to make a change so that the premiums would be payable semiannually, and admits that he collected from the agent of respondent the difference between the semiannual premium and an annual premium. A changed or rewritten policy, as hereinbefore set forth, was issued by respondent and sent its agent, who already had the premium in hand for delivery to appellant, and under the decisions of this Court the delivery of this policy to the agent of respondent was a constructive delivery to appellant, even though it was never actually in his possession, and, had appellant died within six months from the date of the rewritten or changed policy, respondent would have been liable for the face of the policy if no change had been

sought thereunder. *Williams v. Philadelphia Life Ins. Co.,* 105 S. C., 305, 89 S. E., 675; *Cantor v. Reserve Loan Life Ins. Co.,* 161 S. C., 198, 159 S. E., 542; *McLeod v. Life Ins. Co. of Va.* (S. C.), 184 S. E., 116 (not yet reported in State Reports).

However, in April, 1934, this same agent, who had handled the matter of appellant's insurance with respondent, went to appellant and procured an application for a $2,000.00 policy in Volunteer State Life Insurance Company, which policy, when written and delivered, was to take the place of the last written policy by respondent. At that time and until the present, so far as the record discloses, this agent had in hand, or should have in hand, $44.44 of the money of appellant, never having transmitted this money to either insurance company, and such amount was sufficient to pay the premium for some length of time on the policy written and mailed to the agent of said Volunteer State Life Insurance Company. This agent already having in hand the premium, the delivery to him of this last-mentioned policy was a constructive delivery to appellant. It is argued strenuously that there is nothing in the record to show that this agent was not the agent of both respondent and Volunteer State Life Insurance Company, but, aside from the fact that it is a matter of common knowledge that the business of soliciting and writing life insurance is so different from companies doing a general fire insurance business, where one agent may represent many different companies, and even granting that respondent and the Volunteer State Life Insurance Company had the same agent, this agent at the time appellant lost his insurance was acting in a hostile capacity to respondent, that is, taking insurance from it and placing with another company, Volunteer State Life Insurance Company, and therefore was not then acting as the agent of respondent, and respondent is not liable for his acts. An analogous situation is where the president of a bank, acting for himself, discounts a note at his bank; if

the bank acts in good faith, then, the knowledge of the president of a defect in the paper is not imputable to the bank. See *Farmers' & Mechanics' Bank v. Whitehead et al.,* 105 S. C., 100, 106, 89 S. E., 657.

We agree with the trial Judge that, while appellant has made out a case of rank fraud, his cause of action is not against this respondent. All exceptions relating to direction of verdict have been considered and are overruled.

What we have already said in disposing of the exceptions to directing a verdict disposes of the exception to the exclusion of certain testimony offered in evidence, and this exception is also overruled.

Affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER dissents.