15785

HIMES v. METROPOLITAN LIFE INS. CO.

(36 S. E. (2d), 137)

*Messrs. Julian S. Wolfe,* of Orangeburg, and *William El-
liott, Jr.,* of Columbia, Counsel for Appellant,

*Messrs. Zeigler & Brailsford,* of Orangeburg, Counsel for Respondent,

December 5, 1945.

MR. ASSOCIATE JUSTICE OXNER delivered the unanimous Opinion of the Court.

This action was brought by Margaret Eloise Himes, respondent, against Metropolitan Life Insurance Company, appellant, on an alleged life insurance contract. Respondent is the widow of J. F. Himes who died on April 16, 1943. She contends that on April 2, 1943, two weeks prior to the death of her husband, appellant, through one of its soliciting agents, L. P. Rich, agreed, in consideration of the payment of a premium of 94¢ every two weeks, to insure the life of her husband for the sum of $500.00; that under the terms of the contract no medical examination was to be required and the insurance was to become immediately effective upon the payment of the first premium, which was then paid by her husband; and that she, as beneficiary, is entitled to recover the amount of the policy with interest. Appellant denies that it entered into a binding contract of insurance with Himes or that said agent, without its approval, had authority to enter into such a contract. It contends that Himes signed an application for such a policy and paid 94¢, representing a premium deposit of two weekly payments of 47¢ each, for which he was given a receipt,

but under the terms of said application and receipt no policy was to be issued unless the application was approved by the home office in New York and any such policy was not to be effective unless the applicant was alive on the date of issue; that upon receipt of this application it decided to require a medical examination, but the applicant died before the examination was made; that the application was never approved or the policy issued; and that its only liability is for the return of the premium paid, which was tendered to and refused by respondent.

The trial of the case resulted in a verdict for respondent for the amount of the policy with interest, and this appeal is from the judgment entered thereon. There are numerous exceptions, but the only question we find it necessary to determine is whether the lower Court erred in refusing appellant's motions for a nonsuit and directed verdict which were made at appropriate stages of the trial.

On April 2, 1943, L. P. Rich, a soliciting agent of appellant, visited Himes at his home for the purpose of selling him additional insurance. Himes already had two policies with appellant and other members of the family were also insured by this Company. Through the collection of premiums on these policies Rich and the Himes family became well acquainted. This visit lasted about an hour and a half with Himes, his wife (respondent), their daughter, and Rich present. Specimen policies were produced and explained by Rich and examined by respondent and her husband. Respondent and her daughter testified that Himes was reluctant to take additional insurance but Rich insisted that he needed more; that Rich represented that he could write a policy up to $500.00 without a medical examination, and related two instances in that community where there was no medical examination and the applicants died before the policies were issued, stating that in each case the insurance was promptly paid by appellant; that finally Himes decided to apply for a policy in this amount; that Rich read

some, but not all, of the questions contained in the application and filled it out from the information furnished by Himes; that Himes then executed the application and paid 94¢ to Rich to cover the first two weekly premiums; that a receipt for this amount was detached from the application and given to Himes, who then turned same over to respondent with the request that she take care of it; and that Rich stated that this paper was a receipt for the premiums paid, but did not read the receipt to them or otherwise advise them of the terms and conditions contained therein. The following appears in the testimony of respondent:

"Q. Was there anything else said about the policy before Mr. Rich left? A. No, sir, except that when he started to leave he said: 'Well, you are protected for $500.00.'

"Q. From when? A. From then. Says from now on this goes into effect."

The daughter testified that "when he (Rich) was leaving, he said that this policy goes into effect now." (Appellant's counsel made timely objection to that portion of the foregoing testimony relating to statements by Rich as to waiver of medical examination and the effective date of the proposed insurance on the ground that this testimony varied and contradicted the terms of the application and receipt. The objection was overruled.)

The following appears just above Himes' signature on Part A of the application: "I hereby *apply for the policy* described above, and all of the foregoing statements are made by me *to induce* the Company *to issue* said policy of insurance." (Italics ours.) The application clearly shows that it is not an agreement for present insurance. The receipt left with Himes is clearly labeled "Receipt for Premium Deposit. To be surrendered for proper credit in premium receipt book if policy is issued; otherwise, upon return of deposit." Omitting parts immaterial to this controversy, the receipt then reads as follows: "Received 94 (¢) as deposit of weekly premiums * * * in connection

with an application for industrial insurance of concurrent date. This deposit and such application are subject to the following conditions: * * * and (3) if the application is approved at the Home Office of the Company, in New York, the policy will be delivered if the insured is alive on its date of issue. * * * If a policy be issued on such application, this deposit will be applied toward payment of the premiums thereon. If such application be rejected, this deposit will be returned to the applicant * * *."

Rich testified that he was authorized to forego a medical examination when the amount of the policy applied for did not exceed $500.00, but stated that it was necessary for such application to be approved by the home office. He denied stating to Himes that the insurance applied for became effective immediately, saying that he told Himes "he was insured provided it was approved by the home office." He admitted saying that claims had been paid where the applicant died before the policy was delivered, but stated that these were instances where the application had been approved by the home office and death occurred before delivery of the policy to the insured.

Rich forwarded the application to the district office at Columbia, which then forwarded it to the home office in New York City where it was received on April 8, 1943. The report attached to the application showed that applicant had suffered from a urine disturbance in 1933.. For this reason, the home office, on April 20, 1943, returned the application to the district office with a request for a medical examination. Himes died before any medical examination could be made. The application was never approved and no policy issued.

Several days after the death of Himes, Rich again visited the home for the purpose of preparing and having executed proofs of death in connection with the policies carried with appellant. He included a proof on the policy in question, stating to respondent that he thought the Company would

also pay the claim on this policy. The Company paid the amounts due on the other policies, but denied liability on the one in controversy.

The record does not disclose the extent of Himes' education. In the application his occupation was stated as that of electrician. Respondent testified that she reached the ninth grade in school and had had some business experience. She stated that she never read the receipt which was left with her.

This is not an action to recover damages for fraud and deceit. Nor is it sought to avoid a contract on the ground of fraud. Respondent declares upon the contract; she does not seek reformation thereof. It is not clear from the complaint whether respondent seeks to recover on an oral contract of insurance or to establish a waiver of certain provisions in the application and receipt, but the action was tried in the lower Court and submitted to the jury on the theory that it was one on an oral contract of insurance and this is the position apparently taken in respondent's brief. Is there any competent evidence to sustain such a contract of insurance? We think not and the Court should have granted appellant's motion for a directed verdict for 94¢, the amount of the premium deposit.

The application and receipt must be considered together and constitute the written agreement between the parties. The terms thereof make the contract dependent upon the approval of the application by appellant. It seems clearly apparent from this application and receipt that a written policy of insurance was contemplated by the parties rather than an oral contract. All prior agreements were merged in the written agreement and the testimony admitted over appellant's objection constituted an attempt to vary or contradict by parol evidence the terms of this agreement and should have been excluded.

The case of *Hyder v. Metropolitan Life Insurance Co.,* 183 S. C., 98, 190 S. E., 239, is strikingly similar and clear-

ly sustained the foregoing conclusion. There the plaintiff signed an application for insurance on the life of his son. He sought to prove that the agent stated that if he then paid the first monthly premium, the insurance would become effective "from that day on," and testified that he paid the first premium in reliance upon this assurance. The receipt given to the plaintiff provided that if the application was approved by the home office, the insurance applied for would be in force from that date. The son died two weeks later and before the application was received by the home office. Thereafter plaintiff brought suit for the amount of the policy and it was held that the company was only liable for the return of the premium paid. The Court discussed at length the nature and effect of a receipt such as the one given in the instant case and stated that the insurance did not become effective until the application was approved by the company. The cause of action was construed as one on an alleged oral contract of insurance and it was further held that testimony relating to the representation of the agent as to the effective date of the insurance applied for was inadmissible because it varied the terms and conditions of the application and receipt.

Respondent's counsel seeks to distinguish the *Hyder case* from the instant one. He argues that in this case the respondent alleged that the representations of the agent were made with the intent of cheating and defrauding her and her husband, while fraud was not alleged in the *Hyder case*. Although the acts of the agent in the *Hyder case* may not have been characterized in the complaint as fraudulent, the facts in each case are the same. In each instance it was claimed that the agent represented to the applicant that the insurance would go into effect immediately and that the applicant, relying upon such representation, paid the first premium. It is further argued that in the *Hyder case* the applicant had previous insurance experience and was a person of superior intelligence. There is nothing in this record to

show that Himes was illiterate and from his occupation and earning capacity as stated in the application, we think it may be fairly inferred that he was a person of at least average intelligence. It affirmatively appears that respondent possesses average intelligence and has had some business experience.

Respondent strongly relies on the case of *Cantor v. Reserve Loan Life Ins. Co.* (first appeal), 161 S. C., 198, 159 S. E., 542; (second appeal), 169 S. C., 338, 168 S. E., 848. The distinction between the facts in the *Cantor case* and those of the instant case are so clearly pointed out by the Court in the *Hyder case* that we deem it unnecessary to repeat the distinction here.

The instant case is also readily distinguishable from that of *Thomas v. American Workmen,* 197 S. C., 178, 14 S. E. (2d), 886, 136 A. L. R., 1, and other cases of like nature, where the action was one for the recovery of damages for fraud and deceit growing out of fraudulent misrepresentations as to the terms and provisions of a policy made by the agent to an ignorant person, utterly without any business experience. Even where the cause of action was one for fraud and deceit, it has been held under circumstances similar to those here involved that actionable fraud was not shown because of the failure of the complaining party to avail himself of the opportunity and means at hand to acquaint himself with the written instrument, the contents of which he claims were fraudulently misrepresented to him. *Frierson v. Inter-Ocean Casualty Co.,* 168 S. C., 178, 167 S. E., 232; *Hood v. Life & Casualty Insurance Co.,* 173 S. C., 139, 175 S. E., 76; *Dukes v. Life Insurance Co. of Va.,* 184 S. C., 500, 193 S. E., 36.

The judgment of the lower Court is reversed and the case remanded for the entry of judgment in accordance with the views herein expressed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur.