17338

TIMOTHY M. BOWLING, by G. A. L., JOHN W. NORWOOD, Respondent, v. PALMETTO STATE LIFE INSURANCE COMPANY, Appellant

(99 S. E. (2d) 407)

614

*Messrs. Love, Thornton & Arnold,* of Greenville, *for Appellant,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Respondent,*

*Messrs. Love, Thornton & Arnold,* of Greenville, *for Appellant, in Reply,*

August 5, 1957.

LEGGE, Justice.

James T. Bowling died on February 3, 1954, of injuries sustained in an accident on the night of January 23, 1954. This action was brought by his minor son to recover as beneficiary of a policy of insurance on his father's life, which policy he alleged had been purchased from the defendant by the said James T. Bowling. The complaint, after formal allegations, was as follows:

"3. That on the 18th day of January, 1954, the defendant above named, through one of its duly authorized agents and

employees acting in the course of his employment, approached plaintiff's father, the said James T. Bowling, and induced plaintiff's intestate to purchase from defendant a policy of insurance on his life with a death benefit of Five Hundred Dollars ($500.00), or a death benefit of One Thousand Dollars ($1,000.00) in the event death occurred as a result of an accident, the plaintiff herein being the designated beneficiary; that plaintiff's intestate, on the 23rd day of January, 1954, paid to defendant through its duly authorized agent or employee, acting within the scope of his duties and the course of his employment, the required premium for said protection in the amount above set forth.

"4. The plaintiff is informed and believes that subsequently thereto, to wit: on the 3rd day of February, 1954, plaintiff's intestate died as a result of an accident, whereupon defendant became indebted to plaintiff in the amount of One Thousand Dollars ($1,000.00) demand for payment of the same having been made and either refused or neglected.

"Wherefore plaintiff prays judgment against defendant for the sum of One Thousand Dollars ($1,000.00) with interest thereon at the legal rate, together with the costs of his action."

In its answer, the defendant denied coverage, alleging: that the application for the policy, given by James T. Bowling to defendant's agent on January 18, 1954, expressly provided that the policy, if issued, should "become effective if the life proposed is alive and in sound health at date of policy"; that on January 23, 1954, when the agent accepted from Bowling the agreed weekly premium, fifty-six cents, the receipt given to Bowling therefor expressly provided that it was "subject to conditions and limitations as expressed in policy or policies on which above payment has been made,"; that one of the conditions of the policy for which application was made was that it should take effect on the date of its issuance "provided the insured is then alive and in sound health"; that the accident that caused the death of the said

James T. Bowling occurred on January 23, 1954, the same date on which he had paid the initial premium, and before acceptance or rejection of the application for insurance; that Bowling was never in sound health after January 23, 1954; that no policy on his life was issued or delivered; and that it was, therefore, liable only for the return of the premium paid, its tender of which had been refused.

In the course of the trial in January, 1956, testimony was admitted over the defendant's objection to it as incompetent, to the effect that the defendant's agent had told Bowling, at the time of his payment of the initial premium, that the policy thereupon became immediately in force. Timely motion for nonsuit was made and refused. At the conclusion of all of the testimony the trial judge, upon motion of the defendant, struck the testimony before mentioned and directed a verdict for the plaintiff in the amount of fifty-six cents. Thereafter, the plaintiff having moved for a new trial upon the ground that the court had erred in striking this testimony, the trial judge concluded that he had committed error in that regard, and by order dated April 3, 1956, he granted the motion, stating therein that he was doing so on legal, as distinguihsed from discretionary, grounds. From that order the defendant has appealed.

The five exceptions charge error:

1. In admitting the testimony before mentioned (Exceptions II and III) ;

2. In not holding that the policy was never in force because the insured was not in sound health at any time when it could have been issued (Exception IV) ; and

3. In holding that the receipt given by the agent on January 23, 1954, was a binding one making the policy effective on that date (Exceptions I and V).

Except so far as concerns the testimony before referred to, there is no real dispute as to the facts, which were substantially as follows:

James T. Bowling, aged thirty-one, was employed in a barber shop as porter and bootblack. On Monday, January

18, 1954, Mr. John Weldon, the defendant's agent, solicited him for a policy of insurance, and thereupon Bowling signed an application therefor which Mr. Weldon had filled out from information then given him by Bowling. This application, which was introduced in evidence by the plaintiff, shows the amount of insurance applied for to be $500.00, under Plan 522, and the premium fifty-six cents, and designates Timothy M. Bowling, aged five years, son of the applicant, as beneficiary. Immediately above Bowling's signature are the following words: "I declare that the above answers are materially true and are representations made by me as a basis for the issuance of a policy of insurance on the life proposed. Such policy if issued to become effective if the life proposed is alive and in sound health at date of policy".

Bowling did not pay the premium at that time, stating that he would not have the money until the following Saturday (January 23), and asked the agent to come back then to get it. Mr. Weldon accordingly held the application until the morning of January 23, when, having collected the premium from Bowling and given him the receipt hereinafter mentioned, he turned the application in to Mr. Harper, the manager of defendant's Greenville office. Introduced in evidence by the plaintiff was the receipt given to Bowling at the time of his payment of the premium, reading as follows:

"Field Receipt (Weekly Premium)

"Received of James T. Bowling . . . . . . . . . . . Dollars 56 cents on Policy Nos. on new policy subject to conditions and limitations as expressed in policy or policies on which above payment has been made.

"Date of last premium . . . . . . . . . . .

"Debit No. 4454    Palmetto State Life Insurance Co.

"Date Jan. 23, 1954 Per J. Weldon"

On the back of this "Field Receipt" was printed a form of "Deposit Receipt" reading as follows:

"Deposit Receipt ....................

"{ If Receipt given for Revival Policy No. ........

{ ......................

"Received of ............... the sum of .......... the same being a deposit of .... weeks, on account of an application for New Policy (Revival) of insurance in the Palmetto State Life Insurance Company. It is understood that this deposit will be returned if the application is not approved by the Company.

"Palmetto State Life Insurance Co.

"Date ........ 19 ....        Agent ...............  "

Mr. E. M. McCrary, a barber in the shop where Bowling worked, testified, over objection by defendant's counsel, that on January 23, when Mr. Weldon collected the premium from Bowling and handed him the receipt therefor, "He told him when he paid on the insurance it would be in force". (Mr. Weldon denied having made this statement, and on the contrary testified that he had not gone into the shop at all on that date, and that Bowling had made the payment to him on the street in front of the shop, Weldon being in his car at that time).

On the night of January 23, 1954, Bowling was mortally injured in a motorcycle accident, and his death resulted on February 3, 1954.

Bowling's application was mailed by the defendant's Greenville office, on January 23, 1954, to its home office in Columbia, S. C., where it was received on January 25, 1954. The policy applied for was prepared and mailed by the home office to the Greenville office on January 28, together with five other policies, all dated February 1, 1954, all on agent Weldon's debit, and all appearing on the "Life Register" dated January 25, 1954. It was received at the Greenville office on January 29, and was never delivered, Mr. Weldon and Mr. Harper having learned that morning

that Bowling had been seriously, and probably fatally, injured in the accident of January 23, before mentioned.

The policy of life insurance, which was introduced in evidence by the plaintiff showed February 1, 1954, as the date of issue. It named James T. Bowling as the insured and Timothy M. Bowling, his son, as beneficiary. It was in the face amount of $500.00, and to it was attached an endorsement providing for double indemnity in case of accidental death prior to age sixty-five. It contained on its face the following provision: "Effective Date: This Policy shall take effect on the Date of Issue stated in the Schedule herein, provided the Insured is then alive and in sound health".

We do not construe the order under appeal as holding that the premium receipt in question was a "binding receipt" making the policy effective at once. The trial judge had expressly ruled, in the course of the trial, that it was not; and it is apparent from his order granting a new trial:

1. That since the trial there had arisen in his mind a doubt as to whether or not the receipt given for the premium had been intended by the agent to be a binding one, because it had been written on the "Field Receipt" form and not on the "Deposit Receipt" form;

2. That because of this doubt he had come to the conclusion that he should have admitted McCrary's testimony as tending to prove waiver and estoppel; and

3. That he felt that this conclusion was required by *Cantor v. Reserve Loan Life Insurance Co.*, 161 S. C. 198, 159 S. E. 542; *Id.*, 169 S. C. 338, 168 S. E. 848. Obviously, therefore, the primary question for our determination is the admissibility of the parol evidence before mentioned.

In *Cantor v. Reserve Loan Life Insurance Co.*, 161 S. C. 198, 159 S. E. 542, the complaint alleged that, at the solicitation of defendant's agent, one Abraham Samuels had on July 22, 1927, made written application to the defendant for a policy on his life in the sum of $1,000.00, naming the plaintiffs as beneficiaries, and that thereupon the agent had

issued to Samuels a binding receipt whereby the insurance was made effective on the date of the receipt. The pertinent language of the receipt, as set out in the opinion, was as follows:

"Received of Abraham Samuels Five Dollars Cash in full for the first annual premium on 1,000 Dollars insurance.

"The insurance shall take effect and be in force according to the terms of the policy for which this settlement is given."

The complaint further alleged: approval of the application on August 17; issuance of the policy on August 17; mailing of it on August 19 to the soliciting agent for delivery to Samuels; fatal injury of Samuels on August 20 and his death on August 21; and non-delivery of the policy.

The answer denied that the receipt was a binding one, and alleged among other things that it had been delivered to Samuels in connection with his application and as part of the same transaction, and that the application contained an agreement that the policy applied for should not take effect unless the applicant was alive and in good health at the time of delivery of the policy.

In the course of the trial a witness for the plaintiffs (described in the opinion as "not an agent of the defendant, but an assistant of some sort to the soliciting agent") was permitted to testify as follows:

"Q. Did you tell him what kind of receipt you were giving him?

"Mr. West (of counsel for defendant): We object.

"A. Yes, sir. We told him, of course, and collected the money by telling him he was protected by paying on it. That is the only ground we ever have to collect any money.

"Q. That was the only ground you had to collect any money was what you told him? A. Yes, sir.

"Q. Did you describe it to him as a binding receipt? A. Yes, sir."

It is to be observed that no proper objection was made to any of this testimony. Further, defendant's counsel, with-

out reservation, cross examined this witness in regard to statements made to Samuels at the time of the delivery of this receipt.

At the close of plaintiffs' testimony, the court refused defendant's motion for direction of a verdict. The plaintiffs then made a like motion; whereupon the court, refusing to permit the defendant to introduce evidence, granted the plaintiff's motion and directed a verdict in their favor. On appeal, the only matter considered by this court was whether the trial court had erred in denying to the defendant the opportunity to offer testimony as to the nature of the receipt and on the question of delivery of the policy. Holding that the trial court had erred in so doing, this court reversed the judgment and remanded the case for a new trial.

Upon the second trial the plaintiffs obtained a verdict and the defendant appealed. The opinion on that appeal is reported in 169 S. C. 338, 168 S. E. 848, 849; and from it we quote as follows:

"The burden of the exceptions is that the court erred in permitting plaintiff to introduce evidence relative to what occurred at the time of the taking of the application of insurance, which tended to show that the receipt thus given Abraham Samuels was given as, and intended to be, a binding receipt which put the insurance in effect as of that date. These exceptions are disposed of by the decision of this court in the former case which expressly allows such testimony. That is the law of the case."

It is manifest from the two decisions in the *Cantor case* that neither is controlling of the issue now under consideration. As we have pointed out, the issue in the first Cantor appeal was not the admissibility of the evidence before referred to, but whether the trial judge had erred in refusing to permit the defendant to offer evidence to controvert it. There having been no adjudication in the first appeal concerning the admissibility of the evidence, the basis of the ruling above quoted from the opinion in the second appeal is not readily apparent. But neither the correctness nor the

basis of that ruling is of concern to us here. At most, it was to the effect that the admissibility of such evidence was the law of *that* case.

The agreement between James T. Bowling and the defendant was in writing. It consisted of (1) his written application, and (2) the written receipt for the initial premium. These instruments must be considered together. *Himes v. Metropolitan Life Insurance Co.*, 207 S. C. 420, 36`S. E. (2d) 137. They constituted a contract not for present insurance, but for the issuance and delivery of a policy to become effective if the applicant should be alive and in sound health on the date of the contemplated policy. That condition was expressly set forth in the application; it was incorporated in the receipt by reference to the contemplated policy itself, which the plaintiff put in evidence. That the application was signed a few days before the receipt was delivered is immaterial in the circumstances of this case; both were part of a single transaction, together constituting the written agreement for future insurance.

The testimony of the witness McCrary, to the effect that the receipt was intended to put the insurance in force at once, was not evidence of waiver of the terms of an agreement already consummated; it purported to establish, by parol, a contemporaneous agreement at variance with the terms of the written contract. It was therefore inadmissible.

"After an agreement has been consummated, literal compliance with its terms may sometimes be avoided by parol evidence of waiver, resting on the doctrine of estoppel. But where the question, as here, is not whether the insured waived compliance with its contract after the contract was consummated, but whether the contract is wholly expressed in the policy, or only partly in the policy and partly in an alleged contemporaneous agreement, no question of waiver is presented. The sole question is: What was the contract? And the answer must be found in the written instrument."

*Perry v. North Carolina Mutual Life Insurance Co.,* 180 S. C. 72, 185 S. E. 47, 50.

In *Hyder v. Metropolitan Life Insurance Co.,* 183 S. C. 98, 190 S. E. 239, 240, plaintiff declared on an oral contract to insure, alleging that he had paid the premium to the defendant's agent in reliance upon his assurance that "the Insurance was in full force and effect from that day on." The defendant pleaded the written application for insurance, signed by the plaintiff on behalf of his infant son, containing a provision to the effect that the company would incur no liability until the application had been approved and the policy issued and delivered during the lifetime of the applicant. Similar provision was also in the receipt given to the plaintiff, which was in evidence. Parol testimony as to the alleged agreement with the agent whereby the insurance became effective at the time of the payment of the initial premium was held incompetent.

The respondent in the case at bar suggests that the *Hyder case* is not in point because there the action was based on an oral contract while here it is based on a "binding receipt". As will appear upon reading paragraph 3 of the complaint, before quoted, the plaintiff in the instant case did not allege whether he intended to rely upon an oral, or upon a written contract; but at the trial he put in evidence, as the foundation of his cause of action, the application, the receipt, and the policy. The receipt was not on its face a binding one, *Wright v. Life & Casualty Insurance Co. of Tenn.,* 184 S. C. 467, 192 S. E. 670; it was for the purpose of transforming it into a "binding receipt" that the testimony of the witness McCrary was offered. In the *Hyder case* such testimony was at variance with the written contract that the defendant had introduced; here it was at variance with the written contract that the plaintiff himself had introduced. It was equally incompetent in both cases.

Following the *Hyder case* was *Himes v. Metropolitan Life Insurance Co.,* 207 S. C. 420, 36 S. E. (2d) 137, 139, to which we have already referred. There the written ap-

plication and receipt provided among other things that any policy issued pursuant to the application should not be effective unless the applicant was alive on the date of issue; and the plaintiff alleged and attempted to prove an oral agreement with defendant's soliciting agent to the effect that the insurance was to become effective immediately upon the payment of the first premium. Although the case was tried on the theory that the cause of action was based on an oral contract of insurance, this court held that the application and receipt were controlling as to the terms of the contract, and that the parol evidence offered, at variance with their provisions, was inadmissible. To quote from the opinion:

"The application and receipt must be considered together and constitute the written agreement between the parties. * * * It seems clearly apparent that a written policy of insurance was contemplated by the parties rather than an oral contract. All prior agreements were merged in the written agreement and the testimony admitted over appellant's objection constituted an attempt to vary or contradict by parol evidence the terms of this agreement and should have been excluded".

To the same effect is *Roland v. Colonial Life & Accident Insurance Co.,* 217 S. C. 483, 61 S. E. (2d) 50.

It is immaterial that in the case before us the application contained no express provision that its approval should be a condition precedent to the company's liability; nor is it of any consequence that the receipt was written on the "Field Receipt" form rather than on the "Deposit Receipt" form and contained no provision relative to the commencement of liability except by reference to the conditions of the policy for which application had been made. The vital considerations are: (1) that the application and the receipt, considered together, clearly show that the insurance in contemplation was to be effected by a written policy to be issued in the future; (2) that the written agreement between the applicant and the company expressly provided that, if the policy

applied for should be issued, it should become effective only if the applicant was alive and in sound health on the date of its issuance; and (3) that the rules of evidence forbid variance or contradiction of these provisions by parol testimony of a prior or contemporaneous agreement between the parties.

Recovery cannot be predicated upon the fact that the defendant's "Life Register" before mentioned shows the policy as having been issued on February 1, 1954, and "lapsed" on March 15, 1954, nor upon the fact that the policy was mailed from the home office to the Greenville office and there received on January 29, 1954. In the first place, respondent pitched his case on the theory of a "binding receipt", and argues that the introduction of the policy in evidence was only in corroboration of that theory. But the policy, by its very date and express provisions, tends to negate, rather than corroborate, that it became of force at the instant the receipt was given. Cf. *Wright v. Life & Casualty Insurance Co. of Tenn., supra.* And respondent, being committed to the "binding receipt" theory, cannot on appeal seek relief upon another, to wit: that the policy became effective on its issue date. *Watson v. City of Orangeburg,* 229 S. C. 367, 93 S. E. (2d) 20. Moreover, the entries in the "Life Register" do not, in the circumstances of the instant case, warrant the inference that the policy had been unconditionally issued on February 1 and remained in force until March 15. While the word "lapsed" is generally applied to the termination of a policy because of non-payment of premium, its manifest intention here, in view of the company's knowledge, on January 29, of Bowling's serious and probably fatal injuries, and thereafter of his death on February 3, was simply to close the record so far as that policy was concerned. In that sense the use of the word "lapsed" was analogous to its use in relation to a legacy that has never vested.

Respondent argues that under the decision in *Williams v. Philadelphia Life Insurance Co.,* 105 S. C. 305, 89 S. E. 675, 676, receipt of the policy by the

Greenville office on January 29, was constructive delivery of it to James T. Bowling. In the *Williams case,* which was concerned only with the sufficiency of the complaint against demurrer, it was said that delivery to the insured would be inferred where the insurer mailed the policy to its agent for the sole purpose of effecting, through the agent, the unconditional delivery of the policy. "The test", said the court, "is whether the policy is mailed to the agent without any other intention than its unconditional delivery to the applicant". No such constructive delivery can be reasonably inferred from the evidence in the case at bar. The testimony of the manager of appellant's Greenville office, corroborated by that of Mr. Weldon, the soliciting agent, and wholly uncontradicted, was that the Greenville office was instructed, with regard to policies received from the home office, to deliver them on or after the date of issue shown in the policy, provided the insured was then alive and in good health; and that, following such instruction with regard to the policy here involved, delivery of it was not made because of information, received on the same morning that the policy was received, that Bowling was seriously injured.

The contract of insurance expressly provided that the policy should not be effective unless James T. Bowling was, on the date of its issuance, alive and in sound health. It is undisputed that on that date he was not in sound health, but was suffering from mortal injuries from which he died two days thereafter. There was no evidence tending to show waiver of the "sound health" condition of the contract. It follows that the trial judge was correct in directing a verdict for the plaintiff in the amount of the premium paid, fifty-six cents, and in error in granting the plaintiff's motion for new trial upon the grounds therein stated.

Reversed and remanded for entry of judgment in accordance with the views herein expressed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ. ,concur.